IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 3:10CR297-JAG

TIMOTHY N. MYRICK,

Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Defendant Timothy Myrick's Notice of Appeal of Magistrate Judgment to the District Court (Dk. No. 12). On May 21, 2010, Defendant was charged in a Criminal Information with obstruction of mail, in violation of 18 U.S.C. § 1701. On July 20, 2010, Defendant appeared before the Honorable United States Magistrate Judge Dennis W. Dohnal, and the case was scheduled for a bench trial. On September 27, 2010, Defendant was tried and found guilty by Judge Dohnal; he was sentenced to a six-month term of probation and $150.00 fine. On October 11, 2010, Defendant filed a timely notice of appeal. Two issues have been raised on appeal: (1) that the Magistrate Court erred in allowing the introduction of certain evidence without proving the chain of custody; and (2) that the evidence at trial was insufficient as a matter of law to convict Defendant.

Having reviewed the parties' briefs and the transcript of the bench trial before Judge Dohnal, the Court affirms Defendant's conviction.

### I. JURISDICTION & STANDARDS OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(B) & (D) and 18 U.S.C. § 3402, an appeal of a sentence imposed by a United States Magistrate Judge may be taken to a judge of

1

the United States District Court. The scope of the appeal shall be the same as an appeal from a district court to a court of appeals, and the defendant is not entitled to a trial de novo by a district judge. Fed. R. Crim. P. 58(g)(2)(D).

The first issue raised in this appeal, related to the authenticity of admitted evidence, is reviewed under an abuse of discretion standard. *See United States v. Forrest*, 429 F.3d 73, 79 (4th Cir. 2005) ("[D]ecisions to admit evidence [are reviewed] for abuse of discretion."). "Under the abuse of discretion standard, [the appellate court] may not substitute its judgment for that of the [trial] court; rather [it] must determine whether the [trial] court's exercise of discretion, considering the law and the facts, was arbitrary or capricious." *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995).

With respect to the second issue, "a defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997). The Court must uphold Defendant's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also United States v. Madrigal-Valadez*, 561 F.3d 370, 374 (4th Cir. 2009).

## II. BACKGROUND

Postal mail that was supposed to be delivered to residents in the Bon Air neighborhood of Chesterfield County, Virginia, on April 7, 2010, never reached its destination. (Trial Transcript, "Tr.", 46-7.) The discarded mail was eventually discovered on April 27, 2010 in a drain culvert near a creek, soaked in water. (Tr. 7-8.) Richie Johnson, a resident of the Bon Air

neighborhood, found the mail and reported its whereabouts to local police and Channel 12 news. (Tr. 12.)

Shortly thereafter, the United States Postal Service opened an investigation to determine how the mail became discarded. Route 35041 ("Route 41"), where the mail was to be delivered, is typically handled by one mail carrier over a five hour period. (Tr. 76-77.) On April, 7, 2010, however, the route was divided between five separate mail carriers in even sections called "splits" due to the normal carrier's absence. (Tr. 76.) Through administrative records and postmarks on the mail, the case investigator, Special Agent Craig Covert of the Post Office, Office of Inspector General ("Agent Covert" or "Covert"), determined that Timothy Myrick was assigned the second split on the day in question and that the undelivered mail was not only found on that route but was addressed to residences along the second split. (Tr. 24, 32, 37-38, 61-62, 127.) At trial, it was established that Myrick was a transitional, or part-time, employee of the post office who rarely, if ever, wore a uniform while working. (Tr. 77.) Furthermore, Myrick testified that he carried a split of Route 41 on April 7, 2010 but could not recall any other details concerning the deliveries. (Tr. 127.)

Several witnesses testified at the trial for the United States. Carole Messenger, a resident of the Bon Air neighborhood, testified that she saw a young, black man without a postal uniform driving a mail truck that periodically stopped at mailboxes without taking or leaving any mail. (Tr. 20.)

Tanya Pettiford, manager of customer service for the Bon Air Post Office, testified that she directed Post Office employees to travel to the location and retrieve the mail on April 27, 2010. (Tr. 78-79.) Once returned, Pettiford stored the mail in her locked office. (Tr. 80.)

3

Special Agent Covert testified that he retrieved the mail from Pettiford on April 28, 2010 while it was still wet. (Tr. 40-41.) He dried the mail and secured it in an evidence room from the time of receipt until the morning of the trial. (Tr. 42-43.) Covert also testified to examining the addresses on the mail and finding them to be located in the Bon Air neighborhood encompassed by Route 41. (Tr. 45, 59.) Finally, Covert testified regarding his interview of Defendant on April 28, 2010. During the interview, Myrick admitted to carrying mail on a split of Route 41 but could not recall the date or specific streets. (Tr. 55.)

On May 21, 2010, Defendant was charged with intentionally failing to deliver approximately one hundred and thirty-one (131) pieces of standard mail and forty-five (45) pieces of first-class mail by discarding the mail in a creek rather than delivering it to the persons to whom the mail was addressed. This obstruction of mail offense was a violation of 18 U.S.C. § 1701.[1] To prove such offense, the Government was required to show that Defendant: (1) obstructed or retarded, (2) the passage of the mail, and (3) did so knowingly and willfully. *See United States v. Schankowski*, 782 F.2d 628, 631 (6th Cir. 1986); *United States v. Fleming*, 479 F.2d 56, 57 (10th Cir. 1973). Ultimately, on September 27, 2010, Defendant was convicted of obstruction of mail at a bench trial before Magistrate Judge Dohnal.

### III. DISCUSSION

#### A. Chain of Custody

Myrick first argues that the Magistrate Court erred in allowing the introduction of the mail recovered from the creek without proving the chain of custody. Specifically, he contends

---

[1] The provision states:

> Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined under this title or imprisoned not more than six months, or both.

18 U.S.C. § 1701 (2010).

that the Government's evidence was insufficient to prove that the mail found by Ritchie Johnson in the Bon Air culvert was the same mail transported to the Bon Air Post Office for examination by Special Agent Covert. Myrick also argues that the Government failed to show he ever actually possessed the mail in question as opposed to another Route 41 mail carrier. Therefore, he concludes that admission of the mail as evidence was clear error since it was not properly authenticated.

> Rule 901 of the Federal Rules of Evidence, in pertinent part, states:
>
> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Fed. R. Evid. 901. Authentication may be achieved through witness testimony, Fed. R. Evid. 901(b)(1), or the aid of distinctive characteristics, such as "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed. R. Evid. 901(b)(4). The Fourth Circuit, however, has noted that "[t]he burden to authenticate under Rule 901 is not high—only a *prima facie* showing is required." *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009); *see United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985); *United States v. Goichman*, 547 F.2d 778, 784 (3d Cir. 1976).

Importantly, a claim that the government has failed to demonstrate a proper chain of custody goes to the weight of the evidence, not its admissibility. *Vidacak*, 553 F.3d at 350. Moreover, the government need not establish a perfect chain of custody to support admissibility. *Id.* (citing *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989) ("deficiencies in the chain of custody go to the weight of the evidence, not its admissibility; once admitted, the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence."). The Fourth Circuit, in *Vidacak*, added, "[i]ndeed, the prima facie showing may be accomplished

5

largely by offering circumstantial evidence that the documents in question are what they purport to be. *Id.* (citing *United States v. Dumeisi*, 424 F.3d 566, 575-76 (7th Cir. 2005) (holding that documents of the Iraqi Intelligence Service were properly authenticated by circumstantial evidence and witness testimony); *United States v. Elkins*, 885 F.2d 775, 785 (11th Cir. 1989) ("Use of circumstantial evidence alone to authenticate a document does not constitute error.")).

The trial testimony of Pettiford and Covert provided a reasonable basis to conclude that the mail found in the Bon Air culvert was the same as the mail ultimately secured by Agent Covert. Pettiford testified under oath that she instructed certain post office employees to recover the mail on April 27, 2010, and once the task was completed, that mail was locked in her office. (Tr. 79-80.) Agent Covert testified that he took possession of the mail the following day, dried it, placed it in appropriate containers, and secured it from tampering by storing the mail in an evidence room. (Tr. 41-43.) Furthermore, the mail's distinctive characteristics—that it was wet upon arrival at the Bon Air Post Office and contained the addresses and postmarks matching the indicators of the mail found in the culvert—provided substantial support for its admission as evidence at trial. (Tr. 41-43, 45, 59.)

The Court, therefore, finds no abuse of discretion in the Magistrate Court's evidentiary ruling.

B. Sufficiency of Evidence

Myrick further argues that the evidence presented at trial was circumstantial and insufficient to convict him beyond a reasonable doubt. He claims the Magistrate Court made misguided assumptions with respect to the accuracy of post office records and procedures such that "a reasonable hypothesis of innocence in this case includes that Myrick never got the mail . .

. [or] that Bradham [the mail carrier for Route 41's first split] got the mail and dumped it." (Def's Br. in Supp. of Appeal 20.)

On appeal, this Court must uphold Defendant's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *United States v. Madrigal-Valadez*, 561 F.3d 370, 374 (4th Cir. 2009); *see United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989) ("circumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence."). The evidence in this case clearly suffices.

First, the Government provided eyewitness testimony from a neighborhood resident that a young, black male without a postal uniform was operating a mail truck near where the undelivered items were later discovered. The evidence at trial showed that Defendant was assigned to the relevant portion of Route 41 on April 7, 2010. It also showed that, as a transitional employee, he was not required to wear the standard postal uniform worn by full-time mail carriers. (Tr. 77, 160.) In addition, Agent Covert was able to match the postmarks on the mail recovered from the culvert to addresses of the residences along the second split of Route 41, the portion assigned to Myrick. (Tr. 45, 59.) Finally, the Government's evidence related to post office procedures and the regularity of mail was also sufficient in this case. Despite inadequacies in the completion of certain administrative forms and the sorting of pieces of mail, no evidence was presented at trial that an entire split could be misplaced or improperly assigned.

The evidence at trial, therefore, provided a reasonable basis for the Magistrate Court to conclude that the essential elements of the crime were proven beyond a reasonable doubt. A rational trier of fact could—and did—find Defendant guilty.

IV. **CONCLUSION**

For the reasons stated herein, the Court affirms the decision of the United States Magistrate Judge. An appropriate Order shall issue.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

/s/
John A. Gibney, Jr.
United States District Judge

Date: March 16, 2011
Richmond, VA